**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

VLSI TECHNOLOGY LLC,

        Plaintiff,

    v.

INTEL CORPORATION,

        Defendant.

Case No. 6:19-cv-00255-ADA

**PLAINTIFF VLSI TECHNOLOGY LLC'S OPPOSITION TO**
**DEFENDANT INTEL CORPORATION'S MOTION TO CHANGE VENUE**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................... 1

II.     PROCEDURAL HISTORY ....................................................................... 3

III.    LEGAL STANDARD ................................................................................ 3

IV.     ARGUMENT ............................................................................................. 4

        A.      Intel Fails To Meet Its Burden To Prove That Transfer To The
                District Of Delaware Advances The Interests of Justice .............................. 4

                1.      Intel's Accusations Of "Forum Shopping" Do Not Justify
                        Transfer .................................................................................... 5

                2.      Transfer Would Not Serve Judicial Economy Or Justice ................... 8

        B.      The Private Factors All Weigh Against Transfer ........................................ 9

                1.      "Sources Of Proof" Factor Weighs Against Transfer ........................ 9

                2.      "Compulsory Process" Factor Weighs Against Transfer .................. 11

                3.      "Cost of Attendance" Factor Weighs Against Transfer ................... 11

                4.      "Practical Problems" Factor Weighs Against Transfer .................... 13

        C.      The Public Factors Weigh Against Transfer ............................................. 18

                1.      "Congestion" Factor Weighs Against Transfer ............................... 18

                2.      "Localized Interest" Factor Weighs Against Transfer ...................... 19

                3.      "Familiarity" And "Conflict of Law" Factors Are Neutral ............... 20

V.      CONCLUSION ........................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agis Software Dev. LLC v. Huawei Device USA Inc.,*
2018 WL 2329752 (E.D. Tex. 2018) ..............................................................................13

*Alexander v. Franklin Res., Inc.,*
2007 WL 518859 (N.D. Cal. 2007) ...................................................................................8

*Aliano v. Quaker Oats Co.,*
2017 WL 56638 (N.D. Ill. 2017) ....................................................................................12

*Andrade v. Chojnacki,*
934 F. Supp. 817 (S.D. Tex. 1996) ..................................................................................8

*AT&T Intellectual Prop. I, L.P. v. Cox Commc'ns, Inc.,*
2015 WL 4148239 (D. Del. 2015) ....................................................................................7

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.,*
571 U.S. 49 (2013).............................................................................................................5

*Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.,*
2016 WL 6909479 (W.D. Tex. 2016)..............................................................................13

*Aventis Pharm., Inc. v. Teva Pharm. USA Inc.,*
2007 WL 2823296 (E.D. Tex. 2007) ..........................................................................8, 18

*Baker v. Wash. Nat'l Ins. Co.,*
2012 WL 12850254 (W.D. Tex. 2012)..............................................................................4

*Byerson v. Equifax Info. Servs., LLC,*
467 F. Supp. 2d 627 (E.D. Va. 2006) ...............................................................................5

*Calamp Wireless Networks Corp. v. Orbcomm, Inc.,*
2016 WL 9150694 (E.D. Va. 2016) ................................................................................17

*Content Guard Holdings, Inc. v. Amazon.com, Inc.,*
2015 WL 11089745 (E.D. Tex. 2015)...............................................................................5

*DataQuill, Ltd. v. Apple Inc.,*
2014 WL 2722201 (W.D. Tex. 2014).........................................................................10, 20

*DataTreasury Corp. v. First Data Corp.,*
243 F. Supp. 2d 591 (N.D. Tex. 2003) .......................................................................8, 17

*Doubletree Partners, L.P. v. Land Am. Am. Title Co.*,
2008 WL 5119599 (N.D. Tex. 2008) ...............................................................5

*Good Tech. Corp. v. MobileIron, Inc.*,
2015 WL 1458091 (D. Del. 2015)...................................................................18

*Highpoint Risk Servs. LLC v. Companion Prop. & Cas. Ins. Co.*,
2016 WL 4479511 (N.D. Tex. 2016) ..............................................................12

*Idenix Pharm., Inc. v. Gilead Scis., Inc.*,
2014 WL 12782106 (D. Mass. 2014) ..............................................................12

*Infineon Techs. AG v. Fairchild Semiconductor Int'l, Inc.*,
2009 WL 3150986 (D. Del. 2009)...................................................................18

*InMotion Imagery Techs., LLC v. Imation Corp.*,
2013 WL 1279055 (E.D. Tex. 2013) ................................................................9

*Intercont'l Transp. Co. & Mar. Overseas Corp. v. Sea-Land Servs., Inc.*,
1969 WL 173718 (S.D.N.Y. 1969)....................................................................7

*Junior Volleyball Ass'n of Austin v. Summit Hosting LLC*,
2019 WL 1313467 (W.D. Tex. 2019)...............................................................11

*Kokusai Semiconductor Equip. Corp. et al. v. ASM Int'l, N.V.*,
2019 WL 1281228 (D. Or. 2019) ....................................................................17

*LegalForce, Inc. v. Legalzoom.com, Inc.*,
2018 WL 6179319 (C.D. Cal. 2018) .................................................................8

*Leviton Mfg. Co. v. Nicor, Inc.*,
2007 WL 505784 (D.N.M. 2007) ....................................................................14

*McCuin v. Tex. Power & Light Co.*,
714 F.2d 1255 (5th Cir. 1983) ..........................................................................6

*In re Medrad, Inc.*,
215 F.3d 1341 (Fed. Cir. 1999) .........................................................................5

*In re Microsoft Corp.*,
630 F.3d 1361 (Fed. Cir. 2011) .........................................................................7

*In re Nintendo*,
589 F.3d 1194 (Fed. Cir. 2009). .....................................................................20

*Par Pharm., Inc. v. Breckenridge Pharm., Inc.*,
2015 WL 5301640 (D. Del. 2015).....................................................................5

*PPS Data, LLC v. Diebold, Inc.*,
  2012 WL 1884655 (D. Utah 2012)................................................................8

*Research in Motion Ltd. v. Visto Corp.*,
  457 F. Supp. 2d 708 (N.D. Tex. 2006) ........................................................16

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ....................................................................14

*RPB Safety, LLC v. Tru-Vision Plastics, Inc.*,
  No. 6:18-cv-367-ADA, Dkt. 14 (W.D. Tex. Feb. 20, 2019) ...........................11

*SCVNGR, Inc. v. DailyGobble, Inc.*,
  2015 WL 13501487 (E.D. Tex. 2015)..............................................4, 10, 11

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  137 S. Ct. 1514 (2017).................................................................................6

*Tex. Ass'n of Realtors, Inc. v. PDFfiller, Inc.*,
  2017 WL 3821690 (W.D. Tex. 2017)...........................................................19

*Tinnus Enters., LLC v. Telebrands Corp.*,
  2018 WL 1242050 (E.D. Tex. 2018)............................................................20

*TiVo Inc. v. Verizon Commc'ns, Inc.*,
  2010 WL 11468564 (E.D. Tex. 2010)..........................................................11

*In re Triton Ltd. Securities Litig.*,
  70 F. Supp. 2d 678 (E.D. Tex. 1999)............................................................6

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
  2010 WL 2771842 (E.D. Tex. 2010)............................................................17

*U.S. Ethernet Innovations v. Ricoh Ams. Corp., LLC*,
  2013 WL 12141402 (E.D. Tex. 2013)..........................................................13

*Uniloc USA Inc. v. Box, Inc.*,
  2018 WL 2729202 (W.D. Tex. 2018)...........................................................17

*Uniloc USA Inc. v. LG Elecs. U.S.A. Inc.*,
  2019 WL 690290 (N.D. Cal. 2019) .............................................................16

*Valeo, Inc. v. Fed.-Mogul Corp.*,
  2013 WL 8480673 (W.D. Tex. 2013)...........................................................10

*VLSI Tech. LLC v. Intel Corp.*,
  2018 WL 5342650 (D. Del. 2018).............................................................5, 16

*In re Volkswagen of Am., Inc.*,
    566 F.3d 1349 (Fed. Cir. 2009) ...........................................................................17

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) .........................................................................4, 9

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .........................................................................3, 4

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*,
    2018 WL 4620636 (E.D. Tex. 2018) ...................................................................9

*Whistler Grp., Inc. v. PNI Corp.*,
    2003 WL 22939214 (N.D. Tex. 2003) ...............................................................17

*Wiley v. Gerber Prods. Co.*,
    667 F. Supp. 2d 171 (D. Mass. 2009) ...............................................................12

*In re WMS Gaming Inc.*,
    564 F. App'x 579 (Fed. Cir. 2014)....................................................................19

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010) ...........................................................................7

**Rules**

Fed. R. Civ. P. 1...............................................................................................19

**Statutes**

28 U.S.C. § 1404(a) ....................................................................................3, 4, 5, 9

**Other Authorities**

Pub. L. 111-349, 124 Stat. 3674-76 (2011) .........................................................6

**Patents Asserted In First Texas Case (Case No. 6:19-cv-00254-ADA)**

U.S. Patent No. 8,156,357 ("the '357 Patent")......................................Dkt. 1, Ex. 1

U.S. Patent No. 7,523,373 ("the '373 Patent")......................................Dkt. 1, Ex. 2

U.S. Patent No. 7,725,759 ("the '759 Patent") .....................................Dkt. 1, Ex. 3

**Patents Asserted In Second Texas Case (Case No. 6:19-cv-00255-ADA)**

U.S. Patent No. 6,366,522 ("the '522 Patent")......................................Dkt. 1, Ex. 1

U.S. Patent No. 6,633,187 ("the '187 Patent")......................................Dkt. 1, Ex. 2

**Patents Asserted In Third Texas Case (Case No. 6:19-cv-00256-ADA)**

U.S. Patent No. 7,292,485 ("the '485 Patent").......................................................Dkt. 1, Ex. 1

U.S. Patent No. 7,606,983 ("the '983 Patent").......................................................Dkt. 1, Ex. 2

U.S. Patent No. 7,793,025 ("the '025 Patent").......................................................Dkt. 1, Ex. 3

\* Unless otherwise noted, internal citations and subsequent history are omitted, and emphasis is added.

## I.     INTRODUCTION

This District is not just a legally proper forum for these actions—a fact Intel necessarily concedes—but is easily the most sensible and convenient forum when the facts of the cases are properly taken into account.  Each of the cases filed in this District concerns inventions made in this District, by inventors who reside in this District, in the course of their employment at companies based in this District.  Indeed, a full ***seventeen of the eighteen living inventors named on the asserted patents*** are believed to still reside in this District, as they did when the inventions were made at local companies SigmaTel, Inc. and Freescale Semiconductor, Inc.[1] Those companies have since merged with NXP, one of the world's leading semiconductor manufacturers, whose domestic operations are also headquartered in this District.  As Intel knows perfectly well but neglected to mention, NXP and VLSI Technology LLC ("VLSI") are working together to obtain fair value for the use of NXP's and its predecessors' inventions— value that in significant part NXP will reinvest in research and development in this District. Decl. ¶ 17.  And as Intel is also well aware but omitted from its brief, numerous NXP and Freescale employees involved in evaluating, patenting, licensing, and otherwise commercializing the inventions at issue reside in this District.  *Id.* ¶ 18.

Intel also has a large presence in this District, and conducts substantial infringing activities in this District, including at least the use, marketing and sale of accused products to customers in this District.  One of Intel's top customers for the accused products, Dell Technologies, Inc., is headquartered in this District.  And, contrary to what Intel suggests in its motion, publicly available information demonstrates that many of Intel's own 1,700 employees in this District have been and remain deeply involved in work on the technologies at issue in

---

[1] The sole exception is Kevin Locker ('983 Patent inventor), who now works for Intel in Arizona, which is of course closer to Texas than Delaware.

these cases.  As merely one example, Intel's employees from this District have nearly 100 patents which explicitly discuss Intel's QuickPath Interconnect ("QPI") technology, which is accused under the '983 Patent.  Considerable other published work of local Intel employees similarly concerns patented technologies at issue here.  *See infra* § IV.B.1.

In stark contrast, neither party has even a single relevant employee in the District of Delaware.  None of the inventors of the asserted patents live in Delaware.  None of the inventions at issue were made anywhere near Delaware.  Nor does Intel identify any relevant third parties with operations in Delaware.  To the contrary, when recently trying to transfer itself ***out*** of Delaware, Intel insisted that it has "no connection . . . other than [its] organization in Delaware," "did not design, develop, or manufacture the accused products . . . in Delaware," "has no offices, facilities, or employees who work in Delaware," "has no witnesses in Delaware," and "has no documents or servers in Delaware."  Ex. 1 at 1-2.[2]  Now that Intel seeks to achieve the opposite result for strategic purposes, it has not apprised the Court of these facts.

Intel's motion to transfer is rife with mudslinging about a wide variety of irrelevant matters.  VLSI will not respond in kind.  Instead, VLSI will address the factors that govern a proper evaluation of transfer requests in this Court, the vast majority of which Intel disregards. Notably, the first time Intel identifies any of the relevant Fifth Circuit factors is on the thirteenth page of its twenty-page brief.  And Intel never mentions its heavy burden under Fifth Circuit law to prove that the District of Delaware would be the "clearly more convenient" forum for the cases VLSI chose to bring in this Court.

The relevant inquiry, prescribed by factors Intel relegated to the last third of its brief where they were neither fully nor fairly addressed, demonstrates that this District is the most

---

[2] All exhibits are attached to the Declaration of Charlotte J. Wen.

convenient and appropriate venue for these cases.  The District of Delaware, a venue remote from all known witnesses and relevant events, to which Intel professes to have essentially "no connection," has not suddenly become "clearly more convenient" than this District.

## II.     PROCEDURAL HISTORY

There are multiple actions pending between the parties in federal court.  The first, pending in the Northern District of California, is currently stayed pending *inter partes* review. The second is pending in the District of Delaware.  Intel moved to transfer that case to California, but the court denied Intel's motion.  Decl. ¶¶ 6-7.

VLSI filed another case in Delaware in March 2019.  Before anything happened in that case, including any responsive pleading or motion practice, VLSI learned of this Court's experience in patent infringement litigation.  This knowledge, coupled with the fact that additional patents VLSI wanted to pursue all concerned inventions made in this District, prompted VLSI to dismiss its just-filed case in Delaware as a matter of right and immediately file its new claims in this District.  VLSI did so quite simply because, as detailed below, this District is clearly the most convenient District to adjudicate the particular set of claims it chose to file here.  Decl. ¶ 9.

## III.     LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court may, "[f]or the convenience of parties and witnesses, in the interest of justice," transfer a civil action to "any other district or division where it might have been brought."  To evaluate whether a transfer would serve both "the convenience of parties and witnesses *and* in the interest of justice," district courts consider private interest and public interest factors.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*").  The private factors are (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of

attendance for willing witnesses; and (4) all other practical problems that make a trial of a case easy, expeditious, and inexpensive." *Baker v. Wash. Nat'l Ins. Co.,* 2012 WL 12850254, at *3 (W.D. Tex. 2012) (citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)).  The public factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of law or in the application of foreign law." *Id.*

A plaintiff's choice of venue, while not a separate factor, "contributes to the defendant's elevated burden in proving the transferee venue is 'clearly more convenient' than the transferor venue." *SCVNGR, Inc. v. DailyGobble, Inc.*, 2015 WL 13501487, at *2 (E.D. Tex. Oct. 30, 2015).  Thus, under Fifth Circuit law, Intel cannot prevail on its motion unless it meets its "significant burden" to prove that the District of Delaware is the "clearly more convenient" forum. *Volkswagen II*, 545 F.3d at 314-315. "[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice [of venue] should be respected." *Id.*

IV.    **ARGUMENT**

    A.    **Intel Fails To Meet Its Burden To Prove That Transfer To The District Of Delaware Advances The Interests of Justice**

Intel requests transfer based almost exclusively on what it deems the "interests of justice." Those interests do not support transfer here.  Moreover, Intel's argument fails to follow the established framework for analysis of the issue it has raised.  The Fifth Circuit has made clear that ***both*** Section 1404(a) considerations—the interests of justice ***and*** the convenience of parties and witnesses— should be evaluated using the public and private factors. *Volkswagen II*, 545 F.3d at 315 ("[T]he private and public interest factors . . . [are] appropriate for the determination of whether a § 1404(a) venue transfer ***is for the convenience of parties and***

*witnesses and in the interest of justice*.").[3]

### 1.    Intel's Accusations Of "Forum Shopping" Do Not Justify Transfer

Intel's pejorative accusations of "forum shopping" and "judge shopping" are both misplaced and irrelevant. "[P]laintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), [and the Supreme Court has] termed their selection 'the plaintiff's venue privilege.'" *Content Guard Holdings, Inc. v. Amazon.com, Inc.,* 2015 WL 11089745, at *2 (E.D. Tex. 2015) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013)). Intel is aware of this precedent, given that it was explained at length by the District of Delaware when it rejected Intel's bid to move the Delaware case to California. *VLSI Tech. LLC v. Intel Corp.*, 2018 WL 5342650, at *3 (D. Del. 2018) ("The principle that a plaintiff can lawfully engage in forum shopping is . . . fundamental to our federal system . . . And twice in the context of a § 1404(a) transfer motion, the Court has recognized the legitimacy of forum shopping"). *See also, e.g.*, *Par Pharm., Inc. v. Breckenridge Pharm., Inc.*, 2015 WL 5301640, at *3 (D. Del. 2015) ("[T]o suggest that a company that chooses different venues for different suits is operating in bad faith is disingenuous, and the suggestion is a not-so-subtle attempt to cloak the venue selection exercise in which every company engages with overtones of intentional misconduct."). Consistent with nationwide law, it is well-settled here that:

The existence of [forum choices] not only permits but indeed invites counsel in

---

[3] In Intel's "interests of justice" cases, the courts merely considered judicial economy as a separate "interests of justice" analysis rather than under the "practical problems" factor as customary. *E.g.*, *In re Medrad, Inc.*, 215 F.3d 1341, 1341 (Fed. Cir. 1999) ("substantial overlap in issues" between cases); *Doubletree Partners, L.P. v. Land Am. Am. Title Co.*, 2008 WL 5119599, at *2 (N.D. Tex. 2008) (complete factual and legal overlap: plaintiff's claims vs. defendant's declaratory judgment claims); *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 631 (E.D. Va. 2006) (transferring to same venue "very similar" class actions involving same facts and causes of action against same defendants). As shown further in Section IV.B.4, judicial economy considerations strongly disfavor transfer here.

> an adversary system, seeking to serve in his client's interests, to select the forum that he considers most receptive to his cause. The motive of the suitor in making this choice is ordinarily of no moment: a court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied are more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor.

*In re Triton Ltd. Securities Litig.,* 70 F. Supp. 2d 678, 689 (E.D. Tex. 1999) (quoting *McCuin v. Tex. Power & Light Co.,* 714 F.2d 1255, 1261–62 (5th Cir. 1983)).

The present cases could, in theory, have been filed in this District for many of the above reasons. The primary reasons VLSI filed the cases here, however, are far more straightforward. VLSI filed these cases in this District because this is where each of the inventions was made, where the vast majority of inventors reside, where the originating companies and their successor are all based, where Intel has a substantial facility, and where other direct connections will result in increased efficiency. This Court is also particularly well suited to hear and preside over complex patent cases given its experience. VLSI's decision to file here was not animated by improper motives, and Intel's unfounded allegations to the contrary seek to distract from the relevant considerations. Those allegations cannot excuse Intel's inability to carry its burden to prove that Delaware is "clearly more convenient" than this District.

Congress has encouraged patent plaintiffs to seek out forums that will result in efficient, informed litigation by enacting the Patent Pilot Program to "encourage enhancement of expertise in patent cases among district judges." Pub. L. 111-349, 124 Stat. 3674-76 (2011). The Supreme Court has also recently established protections to ensure both that patent plaintiffs choose an appropriate forum and that defendants are not subject to litigating in forums to which they have no connection. *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1521 (2017). VLSI's reasons for filing here accord perfectly with the above-described principles, and Intel does not dispute that this District is an appropriate forum for these cases.

Intel nonetheless speculates, without basis, that VLSI filed in this District because of

alleged "rulings from Judge Connolly (that it apparently did not like)."  Mtn. at 12.  But Intel only points to one ruling, not "rulings."  The one ruling Intel identifies was on a partial motion to dismiss indirect and willful infringement claims for a subset of the patents in the Delaware case without prejudice.  That ruling had no connection to VLSI's decision to file suit here, nor could it have: the specific pleading issues underlying that ruling ***do not exist*** in the pleadings here.  Intel has not identified a single adverse ruling or difference in substantive law that would result in more advantageous law being applied here as compared to Delaware—nor could it. VLSI is not aware of any material differences in the law of indirect infringement or willfulness between this Court and Delaware, both of which must apply Federal Circuit precedent in addressing those and other issues of patent law.

Intel's cited cases similarly fail to support its wrongheaded allegations of "forum shopping."  In *In re Microsoft Corp.*, 630 F.3d 1361 (Fed. Cir. 2011) and *In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010), for instance, the Federal Circuit reversed courts that allowed cases to proceed in venues to which the only real connection was party incorporation, despite evidence and witnesses in the transferee venue.  In *Intercont'l Transp. Co. & Mar. Overseas Corp. v. Sea-Land Servs., Inc.*, 1969 WL 173718 (S.D.N.Y. 1969), the plaintiff refiled a case that had been pending in Puerto Rico for ***four years***; all witnesses resided in, and the accident occurred in, Puerto Rico.  In contrast, here, the majority of known non-party witnesses reside in ***this*** District; the Texas patents are unrelated to and cover distinct subject matter from the Delaware patents; and six Texas patents were only briefly asserted in Delaware (less than two ***months***) before being dismissed.  Intel also misdescribes *AT&T Intellectual Prop. I, L.P. v. Cox Commc'ns, Inc.*, 2015 WL 4148239, at *1 n.2 (D. Del. 2015), which discussed "irreconcilably inconsistent" ***factual*** positions as to related entities' principal places of business. VLSI has at all times maintained consistent positions regarding the inconvenience,

- 7 -

complication, and impracticality of litigating the Texas patents with those in Delaware.[4]

## 2.      Transfer Would Not Serve Judicial Economy Or Justice

Intel has also failed to demonstrate that transfer would further interests of judicial economy, discussed in detail in IV.B.4 below, for the simple reason that there are no efficiencies to be gained through transfer.   Despite Intel's repeated invocations of caselaw advocating transfer when co-pending cases "involv[e] substantially the same factual issues," Mtn. at 10, Intel fails to identify meaningful overlapping factual issues shared between the Delaware case and the Texas cases, let alone show that the cases involve "substantially the same" factual issues.

At bottom, Intel asks this Court to relocate VLSI's eight Texas patents to a Court which recently indicated it was "overwhelmed with cases," including patent cases, Ex. 2 at 75:22-76:1, which has no particular expertise with the technologies at issue in the Texas patents, and which would necessarily have a far slower schedule than this Court due to congestion.   As discussed in detail below, that the Texas and Delaware patents have truly fundamental differences is underscored by Intel's inability to articulate technological overlap with any specificity or identify even *one single* overlapping issue of claim construction, infringement, or validity.   The patents share *no* common claims, *no* common claim terms for construction, *no* common patent

---

[4] Intel's other cases likewise involve completely different facts: *PPS Data, LLC v. Diebold, Inc.*, 2012 WL 1884655 (D. Utah 2012) (case litigated for *two years* before being dismissed); *LegalForce, Inc. v. Legalzoom.com, Inc.*, 2018 WL 6179319, at *3-4 (C.D. Cal. 2018) (multiple motions litigated before dismissal); *Aventis Pharm., Inc. v. Teva Pharm. USA Inc.*, 2007 WL 2823296 (E.D. Tex. 2007) (*22* cases pending in transferee venue involving same plaintiff and drug); *Andrade v. Chojnacki*, 934 F. Supp. 817, 826 (S.D. Tex. 1996) (underlying actions occurred in transferee venue; transferor venue was improper under relevant statute); *Alexander v. Franklin Res., Inc.*, 2007 WL 518859 (N.D. Cal. 2007) (actual "unfavorable rulings" identified, and co-pending cases arose out of same facts); *DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 592-95 (N.D. Tex. 2003) (cases had no connection to either venue and defendant produced "more than 35,000 pages" in the refiled case before it was dismissed). In contrast, here, nothing substantive happened with respect to the Texas patents originally filed in Delaware, the Delaware and Texas cases concern different patents and facts, and a significant number of third parties with information relevant to the Texas cases reside in this District.

families, and *no* common specifications or prosecution histories.  Intel tries to hide these facts by confusing factors, repeatedly double-counting and triple-counting a handful of facts, and ignoring the vast majority of pertinent considerations required under a 1404(a) transfer analysis.  As VLSI's analysis of the *Volkswagen* factors show, transfer would neither convenience the parties nor serve the interests of justice.

### B.    The Private Factors All Weigh Against Transfer

As shown below, each of the four private interest factors weighs against transfer.

#### 1.    "Sources Of Proof" Factor Weighs Against Transfer

The "ease and access to sources of proof" factor weighs against transfer because significant evidence relating to the Texas patents is located in this District.  Nearly all the patents were invented in this District, by inventors residing in this District, while working at companies in this District.  Thus, documents relating to inventorship, conception, reduction to practice, and prosecution are located in this District.  Decl. ¶ 18.  Intel also claimed that it will base arguments on the transfer of the patents to VLSI by NXP, Mtn. at 11-12, negotiations of which took place in this District.  Decl. ¶ 18.  Thus, proof regarding validity, standing, damages, and other subjects will be found in this District, further weighing against transfer.  *Cf. InMotion Imagery Techs., LLC v. Imation Corp.*, 2013 WL 1279055, at *3 (E.D. Tex. 2013) (weighing as relevant "third-party sources of proof, such as the inventors of the asserted patents").

Moreover, Intel itself has a major facility in this District.  Intel's representation that the facility "plays no role in the design, development, or manufacture of the accused products" is contrary to publicly available evidence.[5]  The accused Intel products include *key features* that are accused of infringement here, the technology for which appears to have been designed and

---

[5] *See Weatherford Tech. Holdings, LLC v. Tesco Corp.*, 2018 WL 4620636 at *2 (E.D. Tex. 2018) ("[W]hen deciding a motion to transfer venue for under § 1404(a), the court . . . must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party.").

developed, at least in significant part, by Intel employees in this District.  For example, Intel's employees in this District have nearly 100 patents explicitly discussing Intel's QPI technology, which is accused by the asserted '983 Patent.  Decl. ¶ 20.  Considerable other published work of these employees relates explicitly to the technologies of other patents asserted here.  Decl. ¶¶ 21-26; *compare, e.g.*, '373 Patent with Ex. 3 (storing power information in non-volatile storage devices); '759 Patent with Ex. 4 (ring interconnect); '357 Patent with Ex. 5 (cache flushing); '187 Patent with Ex. 6 (band gap references); '485 Patent with Ex. 7 (SRAM write-assist).

Intel has not shown that the relevant evidence is clearly more conveniently located in Delaware.  To the contrary, Intel has argued that it "has no documents or servers in Delaware." Ex. 1 at 3.  Intel's cases stand for the unremarkable—and here, irrelevant—proposition that "sources of proof" can favor transfer when the defendant is headquartered or stores relevant documents in the transferee venue.  *E.g.*, *DataQuill, Ltd. v. Apple Inc*., 2014 WL 2722201, at *3 (W.D. Tex. 2014) (defendant headquartered in transferee venue); *Valeo, Inc. v. Fed.-Mogul Corp*., 2013 WL 8480673, at *4 (W.D. Tex. 2013) (same).  But it is undisputed here that ***neither party*** has offices, relevant employees, or documents—let alone headquarters—in the District of Delaware.  Thus, Intel's own caselaw militates against transfer here.  *See also SCVNGR*, 2015 WL 13501487, at *3 ("[Defendant] makes no attempt to rebut . . . that important sources of proof related to the accused app's design and development . . . are not actually located in the proposed transferee venue.  This weighs against [Defendant].").

## 2.    "Compulsory Process" Factor Weighs Against Transfer

Intel does not even attempt to show that the District of Delaware is better situated to compel non-party witnesses to testify at trial, nor could it.  This factor ***significantly*** favors this District.  Intel has identified ***zero*** third-party witnesses within the absolute subpoena power of the District of Delaware, whereas this District would have absolute subpoena power over

*seventeen inventors* on the Texas patents.[6]  Decl. ¶¶ 10-16.  In addition, Intel has claimed that information from NXP will be critical for "a variety of issues," Mtn. at 11-12, and all the known non-party NXP employees are in this District.  Decl. ¶ 18.  *E.g.*, *TiVo Inc. v. Verizon Commc'ns, Inc.*, 2010 WL 11468564, at *3-4 (E.D. Tex. 2010) (explaining that this factor weighs in favor of the venue with more usable subpoena powers); *Junior Volleyball Ass'n of Austin v. Summit Hosting LLC*, 2019 WL 1313467, at *2 (W.D. Tex. 2019) ("Defendant has not persuaded the court that the availability of compulsory process to secure witnesses weighs in favor of transfer. This factor only applies to non-party witnesses . . . .").  Intel identifies no authority providing that the availability of depositions allows Intel to disregard this factor.

### 3.    "Cost of Attendance" Factor Weighs Against Transfer

Intel falls far short of meeting its burden to show that the District of Delaware is clearly more convenient with respect to the cost of attendance for willing witnesses, which courts consider to be among the most important factors when evaluating transfer.  *See SCVNGR*, 2015 WL 13501487, at *4.  Not only are the majority of important non-party witnesses located in this District, but Intel makes no effort to establish that travel to this District is burdensome—it is not.  Waco is easily accessible for witnesses located outside the District.  *E.g.*, *RPB Safety, LLC v. Tru-Vision Plastics, Inc.*, No. 6:18-cv-367-ADA, Dkt. 14 at 7 n.5 (W.D. Tex. Feb. 20, 2019).

Instead, Intel's brief focuses on inquiries irrelevant to this factor, implicitly acknowledging that this factor weighs against transfer.  Intel attempts to argue that convenience does not matter because six of the Texas patents were briefly filed in Delaware.  However, whether some of the patents were previously filed elsewhere, in other cases, has nothing to do

---

[6] Although Intel refers to "named invento*rs* that reside outside of Texas," Mtn. at 19, it has only identified *one* inventor residing outside of Texas.  That inventor is now employed by Intel and thus not considered a non-party for the purpose of this analysis.

with the convenience of non-party[7] witnesses *in this case*.  Intel also argues against a strawman, urging the Court to consider whether an "action here is more convenient than transferring the case for the purpose of consolidation."  Mtn. at 17.  This argument fails for at least the independent reason that it assumes without basis that Intel would prevail on a consolidation motion.  But *even if* this factor were considered within the context of a speculative future consolidation, rather than the actual convenience of the witnesses as between the two venues, Intel has not carried its burden.  *Highpoint Risk Servs. LLC v. Companion Prop. & Cas. Ins. Co.*, 2016 WL 4479511, at *16 (N.D. Tex. 2016) (considering the "cost of attendance" and the possibility of consolidation separately, and finding that "[a]lthough consolidation is possible, Defendant has not established that transferring this case . . . will involve *extensive overlap* and therefore serve the interest of justice or promote judicial economy. . . . Defendant has failed to carry its burden of showing that the District of South Carolina is 'clearly more convenient.'").

Moreover, as explained immediately below, the Delaware and Texas cases involve *very* different and non-overlapping issues of fact and law, which not only distinguishes Intel's cited cases but is one of many reasons the cases would not be combined even if they were pending in the same court.[8]  Finally, Intel's arguments regarding "overlapping witnesses" are properly

---

[7] Intel also gives undue weight to the location of party witnesses, although it acknowledges itself that party witnesses are largely irrelevant to this analysis.  Mtn. at 19.

[8] *E.g.*, *Wiley v. Gerber Prods. Co.*, 667 F. Supp. 2d 171, 172 (D. Mass. 2009) (involving a "nearly identical [class action] suit" regarding fruit juice packaging); *Aliano v. Quaker Oats Co.*, 2017 WL 56638, at *3 (N.D. Ill. 2017) (co-pending case in transferee venue involved substantially the same complaints regarding marketing and sale of oatmeal products; in addition, another oatmeal case had already been transferred there); *Idenix Pharms., Inc. v. Gilead Scis., Inc.*, 2014 WL 12782106 (D. Mass. 2014) (the same product accused in co-pending cases was the drug sofosbuvir, in contrast to the different functionalities in Intel's complex processors accused in the Delaware and Texas cases; counterclaims in the cases involved the same patents; and many non-party witnesses resided in neither venue, causing twice the travel; here, many non-party witnesses already reside in the District).  Intel's other cases on this factor are factually distinct: *U.S. Ethernet Innovations v. Ricoh Ams. Corp., LLC*, 2013 WL 12141402, at *4 (E.D. Tex. 2013) (involving four witnesses in transferee venue, three witnesses in Texas, and five

- 12 -

addressed under the "judicial economy" factor, and should not be double-counted here.  *Agis Software Dev. LLC v. Huawei Device USA Inc.*, 2018 WL 2329752 at *3 (E.D. Tex. 2018) ("These factors do not permit a single source of proof or witness to be 'double counted . . . .'").

### 4.    "Practical Problems" Factor Weighs Against Transfer

The fourth private interest factor, "all other practical problems that make a trial of a case easy, expeditious, and inexpensive," weighs strongly against transfer at least because combining the Delaware and Texas cases would be, as a practical matter, unworkable.  Intel also claims that the Delaware court has or will have expertise and familiarity with the patents and technology at issue in the Texas cases.  But Intel offers only threadbare theories of technological similarity, which not only fail to meet its burden here but also highlight the fact that transfer would not result in meaningful efficiencies and would instead add complication, delay, and cost.

***First***, the cases involve different technologies, patents, families, specifications, and prosecution histories, such that they implicate ***entirely different*** questions of claim construction, infringement, validity, and damages, each of which must be evaluated on a patent-by-patent basis.  Intel cannot point to a single overlapping fact or issue other than the patents "deriving from the same third-party patent portfolio" and some overlapping accused products.   In advancing these arguments Intel does not mention that the "third-party patent portfolio" contains over 10,000 U.S. patents covering a wide range of subject matter, or that the accused features in Intel's products are different, or that VLSI acquired the patents through transactions completed ***years*** apart: the Delaware patents were acquired in 2016 and 2017, while the Texas patents were acquired in ***2019***.  Decl. ¶ 28.  Further, VLSI intends to follow the Federal Circuit's guidance and calculate damages for each patent that are fully apportioned to that patent's

---

witnesses in neither venue); *Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, 2016 WL 6909479, at *8 (W.D. Tex. 2016) (no witnesses within 160 miles of original district).

technical footprint. *See, e.g.*, *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("[A] reasonable royalty analysis requires a court to . . . carefully tie proof of damages to the claimed invention's footprint in the market place."). As Intel knows, under these circumstances, courts have denied ***both*** transfer and consolidation. *E.g.*, *Leviton Mfg. Co. v. Nicor, Inc.*, 2007 WL 505784, at *4-5 (D.N.M. 2007) (denying consolidation because "the principal legal and factual issues . . . are different" such that "separate proofs of infringement . . . , and separate and distinct determinations of validity are required"; thus, "consolidation would not further judicial economy, or avoid unnecessary costs and delay").

***Second***, the Delaware case and the three Texas cases are at entirely different stages, and it would be impractical to combine them at this juncture—indeed, Intel does not explain how its plan for transfer, and then consolidation, would even work. In the Delaware case, claim construction is already in progress; the parties have exchanged terms for construction, filed a joint statement, and VLSI has served its opening brief. Decl. ¶ 7. Further, even if the four cases had not been filed nearly a year apart, it would be impractical to combine them—doing so would create a massive thirteen-patent case. Intel has already complained extensively about the difficulty of having just ***five*** patents in a single trial. *See* Ex. 8 at 34:19-22. Judge Connolly, too, has already noted the independent complexity of the existing, five-patent Delaware case. *Id.* at 50:12-14, 50:17-20 ("THE COURT: For what it's worth, I think every judge in this district would say it's unworkable. That's based on the conversations I've had with them. . . . I think every judge that I've consulted with would tell you that 56 claims is unworkable going into a Markman."). Intel has argued the same. *Id.* at 41:4-9 ("These claims [in Delaware] are complicated and the limitations are complicated, and they require a lot of proof on their part.").

***Third***, Intel has failed entirely to prove that the Delaware case and Texas cases share any meaningful technological similarities such that either transfer or consolidation would be in

the interest of judicial economy.  Although there is overlap in accused products between the four cases, the actual accused functionalities are very different, which is unsurprising given that Intel's processors are among the most complex products ever created.  Significantly, Intel only identifies **one** patent from the Delaware case and **two** patents from the second Texas action as being technologically comparable, and solely because they are "directed to alleged power savings and performance improvements in integrated circuits."  Mtn. at 11.  However, as Intel is well aware, power and performance are two of the guiding design principles for nearly all of the semiconductor industry's work, and have been for decades.  In 2007, Intel stated:

> Intel is making a total commitment to advancing ***energy-efficient performance in all computing segments***. . . . Through energy-efficient performance advances across our microarchitecture, silicon, platforms, and software, Intel is on the fast path to creating computers in all sectors and form factors that reach ever greater milestones in performance, energy-efficiency, and expanded capabilities. . . . Intel's vision of energy-efficient performance will enable more compelling, extraordinary computer experiences for ***years to come***.

Ex. 9 at 2, 7; *see also, e.g.*, Ex. 10 at 1 ("Energy efficiency, performance and security . . . are critical").  The ***specific*** performance-enhancing and power management technologies claimed in the relevant patents are starkly different and require education on independent features, making Intel's oversimplification unsuited to assessing whether there would be any actual efficiency benefits allegedly associated with its proposal.  Indeed, Intel has made even less of an effort to show technological overlap here than in its failed motion to transfer the Delaware case to California, where it made the same superficial argument that was properly rejected:

> I find that Intel has overstated the degree to which this action overlaps with the California action. . . . [I]ntel identifies only ***six*** of the 13 patents-in-suits . . . as having the same subject matter (***power management in integrated circuits and low voltage memory devices***).

*VLSI Tech.*, 2018 WL 5342650, at *8.

Intel also argues, remarkably, that the rest of the Texas patents relate at least generally to the Delaware patents because all of the patents relate to "semiconductor technologies."  These

"similarities" are likewise so broad as to be meaningless.  Intel is a semiconductor company.

Nearly everything it has done since its founding has involved semiconductor technologies.  If

these arguments could justify transfer, Intel (and every semiconductor company) would be able

to transfer or consolidate essentially every patent case filed against it.[9]

    **Fourth**, the technological differences between the cases are in fact significant and wide-

ranging.  The Delaware case implicates complex technologies not currently accused in the Texas

cases, including, for example: (1) Intel's chipset products, which require significant independent

discovery and trial time; (2) Intel's fabrication process technologies, which according to Intel

implicate information so sensitive that it must be handled separately even from their highly

confidential source code; (3) the Intel On-Chip System Fabric, a complex on-chip network; and

(4) Intel's thermal management architecture.  Decl. ¶ 29.  The Texas patents likewise involve

technologies not currently accused in Delaware, including (1) SRAM write-assist design;

(2) Intel's Fully Integrated Voltage Regulator; and (3) the dynamic, analog behavior of Intel's

circuits relating to the behavior of transistors between clock cycles.  Decl. ¶ 30.

    Courts routinely deny transfer motions when defendants fail to establish technological

comparability between co-pending litigations in the transferor and transferee venues.  *See, e.g.*,

*Research in Motion Ltd. v. Visto Corp.,* 457 F. Supp. 2d 708, 714 (N.D. Tex. 2006) ("***Because***

***they rely largely on conclusory assertions and offer no supporting evidence, [Defendants]***

***have not met their burden***. . . . Merely because the patents pertain to wireless transmission of

email and other data does not, of course, show that they are so related that the litigation should

be conducted in a single forum."); *Kokusai Semiconductor Equip. Corp. et al. v. ASM Int'l, N.V.*,

---

[9] Nor does a single overlapping inventor, out of eighteen inventors, support Intel's burden.  *Cf. Uniloc USA Inc. v. LG Elecs. U.S.A. Inc*., 2019 WL 690290, at *2 (N.D. Cal. 2019) (denying consolidation where the "cases relate to different patents, . . . and different technologies" ***with only "one overlapping inventor"***).

2019 WL 1281228, at *1-*2 (D. Or. 2019) ("Even though the Accused Products are the same in both actions, the Accused Products are highly complex and involve multiple different technologies and the California lawsuit and the Oregon lawsuit involve different patents, different claim terms, and different claim elements. . . . ASM has failed to demonstrate that the accused products, processes, and patents in the Oregon lawsuit are essentially the same as those in the California lawsuit.").  Intel knows this well, as this is one of the bases on which its last transfer request was denied, and yet it still did no more here to try to establish technical comparability (nor could it have, given the lack of technological overlap).

Intel's cited cases do not change this result.  In *Whistler Grp., Inc. v. PNI Corp.*, 2003 WL 22939214 (N.D. Tex. 2003), only two radar detector patents were at issue (as opposed to *thirteen* patents directed to various aspects of semiconductor technologies); the events at issue took place in the transferee venue; and witnesses, prior art, and documentary evidence were all located in the transferee district.  None of those facts are present here.  Similarly, in many of Intel's cited cases, the transferee court was already litigating or had litigated some or all of the same patents and many of the same claims—in contrast, here, the Delaware court has not litigated, and is not litigating, any of the Texas patents or claims.  *Uniloc USA Inc. v. Box, Inc.,* 2018 WL 2729202, at *4 (W.D. Tex. 2018); *In re Volkswagen of Am., Inc.,* 566 F.3d 1349, 1351 (Fed. Cir. 2009); *DataTreasury Corp.*, 243 F. Supp. 2d at 596; *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, 2010 WL 2771842, at *7-8 (E.D. Tex. 2010).  In other of Intel's cases, courts found specific technological similarities between the patents, which Intel has not demonstrated.  *See Calamp Wireless Networks Corp. v. Orbcomm, Inc.*, 2016 WL 9150694, at *3 (E.D. Va. 2016) (patents in both actions involved "remote tracking systems, and methods for use in the M2M market"); *Infineon Techs. AG v. Fairchild Semiconductor Int'l, Inc.*, 2009 WL 3150986, at *6 (D. Del. 2009) ("[The] patents concern a particular type of field effect transistor, the power

MOSFET").[10]

### C.   The Public Factors Weigh Against Transfer

Intel ignores its burden here, too, arguing that the majority of factors are neutral and therefore favor transfer.  Neutral factors cannot support Intel's burden to show that it is "clearly more convenient" for the parties to litigate the Texas cases in Delaware.  And at least two of the factors are not neutral at all; they militate affirmatively against transfer.

### 1.   "Congestion" Factor Weighs Against Transfer

In its motion here, Intel argues the exact factual opposite of what it argued in Delaware last fall, when it claimed Delaware faced "extraordinary burden from the dramatic increase in the number of patent cases currently affecting this District."  Ex. 1 at 19.  At the time, VLSI thought Delaware was a suitable venue for the Delaware patent infringement claims against Intel, not least because the inventors were located around the globe (including in Israel and Europe), but also because Delaware was significantly less congested than the Northern District of California.  Decl. ¶ 7.  Since that time, however, it appears Judge Connolly's docket has become much less manageable.  Ex. 2 at 75:22-76:1 ("[W]e also have to manage cases because . . . we are overwhelmed with cases here.  I've got 92 ANDA cases just to put things in perspective.").

A comparison of median time-to-trial statistics reveals that this District is far less congested than Delaware.  For example, the median time from filing to trial in this District is *23.2* months, and this Court's standard patent scheduling order calls for trial to be scheduled

---

[10] Intel's remaining cases are similarly distinct.  *Aventis Pharm. Inc. v. Teva Pharm. USA Inc.*, 2007 WL 2823296 (E.D. Tex. 2007) involved significant differences in scale, with *22* related cases already being reviewed by the proposed transferee court, and in *Good Tech. Corp. v. MobileIron, Inc.*, 2015 WL 1458091, at *8 (D. Del. 2015), some patents at issue in both courts belonged to the same patent family and shared similar or identical portions of their specification or prosecution history.  None of those facts are present here.

approximately 67 weeks after the case management conference, or around *18* months after filing.  In contrast, cases in the District of Delaware proceeded to trial in a median time of *30* months after filing, approximately ***66.7% longer*** than the usual schedule in this Court.  Ex. 11. This factor accordingly weighs against transfer.  *Tex. Ass'n of Realtors, Inc. v. PDFfiller, Inc.*, 2017 WL 3821690, at *4 (W.D. Tex. 2017) (where median time to trial was longer in proposed transferee venue, finding "the administrative difficulties flowing from court congestion cuts against transfer.").

Intel's suggestion that VLSI is not entitled to a speedy resolution of its claims because it does not currently practice the asserted patents flies in the face of the Federal Rules of Civil Procedure, which note that the rules should be employed "to secure the just, speedy, and inexpensive determination of ***every action and proceeding***."  Fed. R. Civ. P. 1.  Intel ignores the facts of *In re WMS Gaming Inc.*, 564 F. App'x 579, 581 (Fed. Cir. 2014), where the Federal Circuit vacated the denial of a transfer motion noting the "compelling case for transfer"—core witnesses and sources of proof all resided in the transferee venue, such that "inconvenience clearly favors transfer."[11]  Because Delaware is currently more congested than this Court, this factor weighs against transfer.

### 2.    "Localized Interest" Factor Weighs Against Transfer

The localized interest factor weighs against transfer at least because, as noted, the Texas patents were all invented in this District, primarily by residents of this District, at companies based in this District; because Intel employs a significant number of people working on related matters here; and because extensive infringement is occurring here.  *Tinnus Enters., LLC v.*

---

[11] Intel's claim that Judge Connolly is familiar with the technology in the Texas cases and that that would increase efficiency is both incorrect (as explained above) and unresponsive to this factor.

*Telebrands Corp.*, 2018 WL 1242050, at *5 (E.D. Tex. 2018) ("[T]he inventor of the patent-in-suit . . . lives and works in this District, and . . . [his] invention . . . will be directly called into question in this litigation . . . Accordingly, this District has a strong local interest in the instant action and this factor weighs against transfer.").

Intel's cited cases do not support its argument.  In *In re Nintendo*, none of the parties had offices in Texas, no witnesses resided in Texas, and the inventions had not been made in Texas. 589 F.3d 1194, 1197 (Fed. Cir. 2009).  In *DataQuill*, the plaintiff had no connection to Texas, the inventions at issue had not been made in Texas, and the defendants' headquarters was in the proposed transferee court.  2014 WL 2722201, at *1.

### 3.    "Familiarity" And "Conflict of Law" Factors Are Neutral

These factors are neutral, as both the District of Delaware and the Western District of Texas are familiar with issues of patent law that will govern in this case.

## V.    CONCLUSION

All four private interest factors weigh against transfer, two of the four public interest factors weigh against transfer, and the remaining two factors are neutral.  Intel, which has not even attempted to address the majority of these factors in any meaningful way, has failed to meet its "significant" burden to show that the District of Delaware is "clearly more convenient" than this District.  Intel's motion should be denied.

Dated:  June 3, 2019                              Respectfully submitted,

By:    */s/ Andy Tindel*

   J. Mark Mann (Texas Bar No.
   12926150)
   mark@themannfirm.com
   G. Blake Thompson (Texas Bar No.
   24042033)
   blake@themannfirm.com

**MANN | TINDEL | THOMPSON**
300 W. Main Street
Henderson, TX 75652
Telephone: (903) 657-8540
Facsimile: (903) 657-6003

Andy Tindel (Texas Bar No. 20054500)
atindel@andytindel.com
**MANN | TINDEL | THOMPSON**
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile: (903) 596-0909

Craig D. Cherry (Texas Bar No. 24012419)
ccherry@haleyolson.com
**HALEY & OLSON, P.C.**
100 N. Ritchie Road, Suite 200
Waco, Texas 76701
Telephone: (254) 776-3336
Facsimile: (254) 776-6823

Morgan Chu (*pro hac vice*)
Benjamin W. Hattenbach (*pro hac vice*)
Amy E. Proctor  (*pro hac vice*)
Dominik Slusarczyk (*pro hac vice*)
Molly J. Russell (*pro hac vice*)
Charlotte J. Wen (*pro hac vice*)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
mchu@irell.com
bhattenbach@irell.com
aproctor@irell.com
dslusarczyk@irell.com
mrussell@irell.com
cwen@irell.com

*Attorneys for VLSI Technology LLC*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE] — Document Filing System, to all counsel of record, on this 3rd day of June, 2019.

*/s/ Andy Tindel*
Andy Tindel

- 21 -